UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case. No. _____

JANE DOE,

        Plaintiff,

vs.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY, FLORIDA,

        Defendant.

_____/

## COMPLAINT

Plaintiff, Jane Doe ("Jane"),[1] sues Defendant, The School Board of Miami-Dade County, Florida (the "School Board"), and alleges as follows:

### I.    NATURE OF CASE, JURISDICTION, AND VENUE

1. This case concerns the egregious sexual harassment and abuse of Jane by her AP Literature and Creative Writing teacher, Jason Edward Meyers ("Meyers"), during the 2015-16 school year, while Jane was a minor student at Miami Palmetto Senior High School ("Palmetto High School"). In February 2016, Meyers was arrested for sexual battery of a minor due to his sexual harassment and abuse of Jane. *See State of Florida v. Meyers*, Case No. F-16-003408 (Fla. 11th Jud. Cir. Ct. 2016). Sadly, Jane is one of many female students that Meyers singled out, groomed, and exploited in a systematic fashion during his near decade-long tenure as a reported sexual predator employed by the School Board.

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because

---

[1] This action is brought anonymously to protect Plaintiff's identity, because this concerns her sexual abuse by a teacher when she was a minor student.

Jane sues the School Board under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the School Board resides in, and the events, actions, and omissions giving rise to this case occurred within the Southern District of Florida.

## II. PARTIES AND NON-PARTIES

4. Jane is presently *sui juris*, but at all material times was a minor child and student at Palmetto High School and a resident of Miami-Dade County, Florida.

5. Defendant, the School Board, is a political subdivision or agency of Miami-Dade County, Florida. It has received, and continues to receive, federal financial assistance under Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq*. The School Board, acting through its officials, administrators, employees, agents, and representatives, manages, operates, controls, and supervises the Miami-Dade County Public School District (the "School District"),[2] including Dr. Michael M. Krop Senior High School ("Krop High School") and Palmetto High School. The School Board's responsibilities include, but are not limited to, hiring, firing, transferring, suspending, disciplining, and directing the work of school personnel, and collaborating with the Superintendent and administrators of School District.

6. The Superintendent of the School District is the School Board's secretary and executive officer. Among other things, the Superintendent is responsible for the administration and management of the public schools in the School District. This includes, but is not limited to, hiring, firing, transferring, suspending, disciplining, and directing the work of school personnel,

---

[2] The School District is a unit for the control, organization and administration by the School Board of all public schools within Miami-Dade County. Fla. Stat. § 1001.30. The School District's governing body is the School Board. Fla. Stat. § 1001.40.

2

and collaborating with the School Board and the administrators of the School District. Since September 2008, the Superintendent of the School District has been Alberto M. Carvalho.

7. Each public school in the School District has a Principal and at least one Assistant Principal, who are the administrative and supervisory heads of each school. Together with the School Board, they are responsible for the hiring, firing, transferring, and disciplining of staff, teachers, and other employees at their school.

8. The School Board, the Superintendent, the Principals and the Assistant Principals, individually and collectively, are responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies and procedures, including those concerning sexual discrimination, harassment, and abuse of students by teachers.

9. The Miami-Dade Schools Police Department (the "Schools Police") is a law enforcement agency for Miami-Dade County serving the School District and employed by the School Board and commissioned by the Superintendent. *See generally* § 1006.12(1)(b), Fla. Stat.; SB Policy No. 8480. The Schools Police assign "School Resource Officers" to patrol schools throughout the School District. The Schools Police and its officers, agents, employees, and representatives protect the safety of school personnel, property, students, and visitors. Among other things, the Schools Police is responsible for enforcing compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, as well as federal and Florida law, including those concerning sexual discrimination, harassment, and abuse of students by teachers.

10. At all relevant times, each agent, employee, representative, official, and administrator of the School Board and the Schools Police was the authorized agent of the other and of the School Board, and each was acting within the course, scope, and authority of such agency. Additionally, each of the foregoing individuals and entities, authorized, ratified, or

3

affirmed each act and omission of any other of the foregoing individuals or entities.

### III.   FACTS

11. In 2002, the School Board hired Meyers to be an English and Creative Writing teacher at Krop High School. Meyers taught at Krop High School until his transfer to Palmetto High School in 2011. Meyers taught at Palmetto High School until February 2016, when he was arrested for sexual battery of a minor, Jane. *See State of Florida v. Meyers*, Case No. F-16-003408 (Fla. 11th Jud. Cir. Ct. 2016).

#### A. Meyers Has Been a Sexual Predator Posing as a Teacher Since 2004.

12. Beginning in or around November 2004, Meyers sexually abused J.F., a 17-year-old female student in his Creative Writing class at Krop High School. Meyers groomed J.F. for the sexual abuse with "poetry/prose, his journal prompts, and [her] writings in the daily creative journal," which she remembers "as being fuel that fired [their] inappropriate connection," including multiple occasions of oral sex.

13. That same school year, Officer Nannette Badger of the Schools Police saw Meyers leaning over J.F. at Krop High School in a "very personal" and "intimate fashion." Another student remarked that "he [Meyers] thinks she's fine." Officer Badger did not report Meyers' suspicious conduct with J.F. at that time.

14. Approximately two years later, Meyers "had a yearlong sexual relationship" with M.S., a 17-year-old female student in his Creative Writing class at Krop High School.

15. Around the same time, Meyers also had sex with D.R., a 19-year-old former student of Krop High School.

16. In 2008, Meyers "forced himself" sexually on A.W., a student in his class at Krop High School. Afterwards, A.W. confided in her friend, William Cameron Perkins, and made him promise not to tell anybody about the sexual abuse. A.W. also told Perkins that Meyers and

several other male teachers were in a competition to see how many female students they could "get in bed" before the end of the school year.

17. That same year, Meyers also had sexual relations with J.B., a female student in his Creative Writing Class. J.B. was Perkins' former girlfriend and fiancé. J.B. later told Perkins about her sexual relations with Meyers, prompting Perkins to blow the whistle on Meyers' illicit conduct.

**B. The School Board Has Been on Notice of Meyers' Sexual Predation of Minor Female Students Since at Least 2008.**

18. On or about September 29, 2008, Perkins notified the School Board of Meyers' sexual abuse of female students at Krop High School. Specifically, Perkins sent emails to Krop High School's then-Principal, Dr. Matthew Welker, via its Secretary, Judith Anderson; an unknown person named "Rich"; and Meyers himself. In his emails, Perkins reported that Meyers was "having sex with students and former students" of Krop High School. Perkins implored the school to take action "to prevent" any further sexual predation of its female students by Meyers.

19. In response, the School Board, its administrators, and the Schools Police, among other things: failed to conduct an adequate, thorough, and reasonable investigation of Perkins' report; failed to inform its designated Title IX coordinator; failed to provide any interim measures to safeguard its female students pending its investigation; failed to make any probable cause determination and effect closure to its investigation; failed to reprimand, discipline, or terminate Meyers' employment; and failed to implement any protective or corrective measures to safeguard its female students from the serious danger posed by Meyers' reported propensity for sexual misconduct with female students—all in violation of federal and Florida law and its own policies, procedures, and rules.

20. Instead, the School Board, its administrators, and the Schools Police concocted an

investigative response to Perkins' report of Meyers' sexual misconduct with female students via documentation stating:

    a. that Perkins' report had been assigned to and investigated by several officers of the Schools Police, including then-Sergeant Bradley Rosh and Detective Alvin Marin, in October 2010—two years after Perkins' report in September 2008—although both Rosh and Marin deny ever being assigned or investigating Perkins' report about Meyers' sexual misconduct; and

    b. that unknown detectives of the Schools Police had contacted Perkins, who purportedly did not want to provide the names of the individuals involved—although Perkins denies ever being contacted by the Schools Police about his report of Meyers' sexual misconduct.

21. During the following 2009-2010 school year, Dayson Roa, a senior student in Meyers' Creative Writing class at Krop High School, met with then-Assistant Principal Francisco Garnica. Roa had scheduled the meeting for the specific purpose of reporting that Meyers was engaging in inappropriate and sexual relations with multiple female students in his class. Among other things, Roa told Assistant Principal Garnica that Meyers had sexually abused his underage female classmate, E.N., during a school sponsored fieldtrip to New York City; that Meyers had been giving inappropriate notes to another female classmate, Y.G.; and that Meyers had engaged in sexual relations with a former female student, L.H.

22. The School Board, however, did nothing to investigate or remediate Roa's report of Meyers' continued sexual misconduct with female students—in violation of federal and Florida law and its own policies, procedures, and rules. According to Roa, Assistant Principal Garnica "didn't care," "brushed [him] off," and "did not do anything." As before, the School Board continued to grant Meyers unfettered access to its female students.

23. Over the years that followed, the School Board continued to receive notice of Meyers' inappropriate relations and sexual misconduct with minor female students, including but not limited to the following:

   a. In the fall/winter of 2015, a female student at Palmetto High School, E.C., told Debra Salas, a teacher at Palmetto High School, that Meyers had been behaving inappropriately with her.  E.C. also told Salas that Meyers had been engaging in sexual misconduct with her classmates, J.W. and Jane.

   b. In the fall/winter of 2015, Meyers repeatedly told Jane that his wife and fellow English teacher at Palmetto High School, Kimberly Meyers, suspected that Meyers was engaging in inappropriate relations and sexual misconduct with Jane.  Kimberly Meyers confronted Meyers about his inappropriate relations with Jane in her presence.

   c. After Meyers' arrest in February 2016, a School Resource Officer at Palmetto High School told J.W. and her father that Meyers had been the subject of inquiry regarding his relations with female students for a long time before his arrest.

**C. The School Board Has Been Deliberately Indifferent to the Numerous Reports of Meyers' Sexual Predation of Minor Female Students.**

24. At all material times, and despite the numerous reports of Meyers' sexual misconduct, the School Board failed to promptly and adequately report, investigate, and redress the reports that Meyers posed a serious danger of sexual harassment and abuse to the female students entrusted to the School Board's care, in violation of federal and Florida law and its own rules, policies, and procedures.  Among other things, the School Board did not:

   a. conduct an adequate and reasonable fact-finding investigation into each report

7

      of Meyers' sexual harassment and abuse of female students;

   b. notify its designated Title IX Coordinator of Meyers' reported sexual harassment and abuse of female students;

   c. interview the alleged victims and witnesses about Meyers' reported sexual misconduct—other than Meyers himself;

   d. properly document and disseminate through the proper channels the repeated reports of Meyers' sexual misconduct with female students;

   e. suspend or reassign Meyers, or implement any other interim protective measures, pending an investigation into each report of his sexual misconduct with female students;

   f. make any probable cause findings with respect to Meyers' reported sexual misconduct with female students;

   g. inform anyone, including any administrators, employees, students, or parents, of any probable cause determination with respect to Meyers' reported sexual misconduct with minor female students;

   h. effect closure of the required investigations into the reports of Meyers' sexual misconduct;

   i. reprimand or discipline Meyers or terminate his employment; and

   j. implement any remedial, protective, or corrective measures for the safety of the female students entrusted to its care, such as supervising, monitoring, or restricting Meyers' behavior, interactions, and relations with female students.

25. Notwithstanding the unresolved reports of Meyers' sexual harassment and abuse of female students, the School Board repeatedly gave Meyers glowing performance evaluations as a teacher, noting that he had an "exemplary" ability to "create and maintain a safe learning

environment" for students. The School Board also allowed Meyers to transfer from Krop High School to Palmetto High School in 2011, where he continued to have unfettered access to minor female students—without ever attempting to warn his new school about the prior reports of Meyers' sexual misconduct with female students.

26. At all material times, the School Board knowingly and deliberately exposed its female students, including Jane, to a substantially increased risk of unwarranted and unlawful sexual harassment and abuse by Meyers.

### D. Meyers Continued to Sexually Prey Upon Female Students After His Transfer to Palmetto High School in 2011.

27. During his tenure at Palmetto High School, Meyers continued to exploit his position of trust and authority as a teacher to recruit, groom, and sexually harass and abuse minor female students, including Jane.

28. Meyers' general *modus operandi* included singling out his victims for special treatment and attention, such as recruiting them to participate in a national writing competition known as the "Scholastic Art & Writing Awards," and then directing his victims to meet with him one-one-one behind closed doors before, during, and after school to work on their "writing."

29. The School Board allowed Meyers to cover the window on his classroom door, so that no one could see into his classroom during his one-on-one meetings with female students. At no point was Meyers ever directed not to meet alone with female students in his classroom behind closed doors—even though his predatory behavior was so open and notorious that school administrators and staff began referring to the group of female students that would frequently meet one-on-one with Meyers in his classroom as "Jason's girls."

> ### *i. Meyers sexually harassed and abused Jane while she was a 17-year-old student at Palmetto High School.*

30.     During the 2014-2015 school year, Jane's junior year at Palmetto High School, Jane occasionally performed at an open mic event known as "Poetry Nights," which was hosted by Meyers' Creative Writing Club.  On one occasion towards the end of Jane's junior year, Meyers approached Jane and told her he had seen her performances.  Meyers complimented Jane and told her to sign up for his Creative Writing class the next school year.

31.     At the beginning of Jane's senior year, the 2015-2016 school year, Jane was enrolled in Meyers' AP Literature class, but she not his Creative Writing class due to an error with her schedule.  When Meyers found out, he coordinated with Jane's counselor and the administration to ensure Jane was in both his AP Literature and Creative Writing classes.

32.     Throughout Jane's senior year at Palmetto High School, Meyers exploited the trust and authority attendant to his position to groom Jane for sexual abuse, including but not limited to the following:

   a. Meyers recruited Jane to compete for the Scholastic Art & Writing Awards, for which he was her teacher-adviser.

   b. Meyers directed Jane to meet with alone in his classroom behind closed doors before, during, and after school to work on her writing.

   c. Meyers told Jane her writing was "immature" and "too sappy," and directed her to write "edgier" sexual content.

   d. Meyers directed Jane to study sexually charged writing by Charles Bukowski and Shinji Moon, among others.

   e. Meyers gave Jane a CD of music and sexually explicit poems.

   f. Meyers told Jane to break up with her boyfriend, because her writing would

improve if she were "sad."

g. Meyers told Jane about his personal life, including his strained relations with his family, his marital problems, and his sexual history.

h. Meyers directed Jane to divulge sensitive details about her personal life, including private family matters and her sexual/dating history.

i. Meyers told Jane that their time together was curing his insomnia stemming from issues with his wife and children.

j. Meyers told Jane "I like you."

33. Throughout Jane's senior year at Palmetto High School, Meyers exploited the trust and authority attendant to his position to sexually harass and abuse Jane during their one-on-one meetings in his classroom behind closed doors, including but not limited to the following:

a. Meyers pushed Jane against the wall behind his desk, cupped her face, and kissed her—despite her pleas to "Please don't do this."

b. Meyers performed cunnilingus on Jane in his classroom.

c. Meyers directed Jane to perform fellatio on him in his classroom.

d. Meyers engaged in sexual intercourse with Jane in his classroom.

e. Meyers told Jane that he "had wanted her for so long" and that her "body was perfect."

f. Meyers told Jane that if she got pregnant, she would have to tell her parents that it was her ex-boyfriend's baby and get an abortion.

34. In February 2016, Meyers was arrested and charged with sexual battery of a minor due to his sexual abuse of Jane. *See State v. Meyers*, Case No. F-16-003408 (Fla. 11th Jud. Cir. Ct. 2016).

35. Despite his arrest, the administrators at Palmetto High School informed their staff

11

that the allegations against Meyers were a "lie." Jane was shamed and ostracized by the school's administrators and staff, whose primary concern was protecting Meyers—not Jane. At one point, when Jane sought solace in another classroom, the teacher, Dalia Pulido, told Jane to "get out of my classroom. You need to leave." Another teacher, Andrea Spivak, told Jane and her classmates, "Don't talk about [Meyers' arrest] in here. For those of you that need it, you can get counseling. He's a great person and a great writer. This is just ridiculous."

### ii. *In addition to Jane, Meyers sexually harassed and abused other underage female students at Palmetto High School.*

36. After Meyers' arrest, other female students at Palmetto High School were identified as victims of sexual harassment and abuse by Meyers, including J.W., G.C.P., E.C., and E.B.

37. In or around the fall of 2015, Meyers sexually harassed and abused J.W., a minor female student in his Creative Writing class. First, Meyers recruited J.W. to compete for the Scholastic Art & Writing Awards. Then, during his one-on-one-meetings with J.W., Meyers told J.W. her writing was "good, but boring," and directed her to write "edgier" and sexually explicit content for him; told J.W. about his sexual history, experiences, and desires, and implored her to reciprocate; and kissed her, fondled her body and breasts, and directed her to take nude photographs of herself to show him in school.

38. In or around the fall of 2015, Meyers sexually harassed G.C.P., another female student in his Creative Writing class. Meyers gave her CDs containing songs of a sexual and romantic nature; demanded that G.C.P. break up with her boyfriend; directed her to write about her sexual experiences; and to entitled a poem she had written: "Come Inside Me."

39. Beginning in or around October 2015, Meyers sexually harassed E.C., another female student at Palmetto High School. Meyers asked about her sexual experiences, including

how many partners she had, while telling her that she should "put out" by the second date.

40. Sometime in or around 2015, Meyers also propositioned E.B., another female student at Palmetto High School, to engage in sexual activity with him on several occasions.

41. Jane has retained undersigned counsel and is obligated to pay a reasonable fee for the firm's legal services.

42. All conditions precedent to bringing this action have been satisfied or waived.

### IV.   CAUSES OF ACTION[3]

### COUNT I

**<u>Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681</u>**

43. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

44. Title IX provides, with limited exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

45. At all relevant times, the School Board has benefited from federal financial assistance.

46. As a minor student at Palmetto High School, Jane had the right not to be subjected to sex discrimination on the basis of her gender, including sexual abuse, molestation, exploitation, and harassment. Jane also had a substantive due process right to, and liberty interest in, her bodily integrity.

---

[3] Pursuant to § 768.28, Jane previously provided the School Board with written notice of her intent to sue under Florida tort law. Jane reserves her right to seek leave to amend her complaint once the School Board either denies her claim or the statutory waiting period lapses.

47. At all relevant times, the School Board had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to promptly and adequately investigate and remediate reports of sexual misconduct by a teacher against a student, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. *See, e.g.*, 20 U.S.C. § 1681(a);[4] Florida K-20 Education Code, Fla. Stat. § 1000.01 *et seq.*; Florida Educational Equity Act, Fla. Stat. § 1000.05 *et seq.*; the Florida Administrative Code; the State Board of Education Rules; the Rules of the School Board of Miami-Dade County; and the School Board of Miami-Dade County Bylaws & Policies.

48. Beginning in September 2008, and at various times thereafter, the School Board received notice that Meyers was sexually harassing and abusing female students entrusted to its care. Each report of Meyers' illicit sexual misconduct with female students provided clear warning to the School Board of the danger Meyers' reported predatory behavior posed to female students. The School Board thus knew or should have known that Meyers posed a grave risk of harm to the female students.

49. Each of the School Board's officials, administrators, agents, and employees who received notice of Meyers' reported sexual harassment and abuse of female students had the authority to take corrective action to end Meyers' sexual abuse and harassment of, and discrimination against, female students.

50. At all relevant times, and despite its duty to investigate and respond to the reported sexual harassment and abuse, the School Board failed to conduct a prompt, adequate,

---

[4] For almost two decades, the Department of Education has issued multiple guidance documents reiterating the need for adequate responses by public school districts to reports of sexual harassment and abuse of their students. *See, e.g.*, U.S. Dep't of Educ., Office for Civil Rights (ED OCR), *Q&A on Campus Sexual Misconduct* 4 (Sept. 22, 2017); ED OCR, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, and Third Parties* (Jan. 2001).

impartial, and thorough investigation of the reported sexual misconduct by Meyers and implement any interim measures to protect its students pending an adequate, reliable, and impartial investigation.

51.     At all relevant times, and despite its duty to remediate the reported sexual harassment and abuse, the School Board failed to institute any corrective measures to safeguard its female students from the risk of further sexual abuse, molestation, and exploitation by Meyers.  This includes, but is not limited to: (i) the School Board's failure to terminate Meyers' employment; (ii) its approval of Meyers' request to transfer to Palmetto High School despite unresolved reports that Meyers was having sex with students at Krop High School; (iii) its failure to limit, restrict, supervise, and monitor Meyers' behavior, communications, interactions, and relations with female students; (iv) its failure to warn students or parents of Meyers' reported sexual misconduct; and (v) its failure to abide by federal and Florida law and its own policies and procedures with respect to investigating, documenting, and redressing sexual harassment, abuse, and discrimination.  These decisions were official decisions by the School Board to ignore the danger and risk of sexual harassment of female students by Meyers.

52.     As a direct and proximate result of the School Board's actions and omissions, Jane was sexually harassed and abused by Meyers.

53.     As a result of the sexual harassment and abuse, Jane has suffered, and continues to suffer, substantial injuries, harm, and damages, which are severe and permanent.  This includes but is not limited to past and future emotional, psychological, and physical injuries, pain and suffering, mental anguish, the inability to enjoy a normal life, loss of educational opportunities and benefits, and medical, psychological, and therapeutic treatment for conditions caused by the sexual harassment and abuse.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against the

School Board for damages, injunctive relief, her attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

## COUNT II

### Violation of the Florida Educational Equity Act, Fla. Stat. § 1000.05

54. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

55. The Florida Educational Equity Act, Fla. Stat. § 1000.05(2)(a), provides that:

> Discrimination on the basis of . . . gender . . . against a student . . . in the state system of public K-20 education is prohibited. No person in this state shall, on the basis of . . . gender . . . , be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, or in any employment conditions or practices, conducted by a public educational institution that receives or benefits from federal or state financial assistance.

56. At all relevant times, the School Board has benefited from federal and state financial assistance.

57. As a minor student at Palmetto High School, Jane had the right not to be subjected to sex discrimination on the basis of her gender, including sexual abuse, molestation, exploitation, and harassment. Jane also had a substantive due process right to, and liberty interest in, her bodily integrity.

58. At all relevant times, the School Board had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to promptly and adequately investigate and remediate reports of sexual misconduct by a teacher against a student, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. *See, e.g.*, 20 U.S.C. § 1681(a); Florida K-20 Education Code, Fla. Stat. § 1000.01 *et seq.*; Florida Educational Equity Act, Fla. Stat. § 1000.05 *et seq.*; the Florida

Administrative Code; the State Board of Education Rules; the Rules of the School Board of Miami-Dade County; and the School Board of Miami-Dade County Bylaws & Policies.

59. Beginning in September 2008, and at various times thereafter, the School Board received notice that Meyers was sexually harassing and abusing female students entrusted to its care. Each report of Meyers' illicit sexual misconduct with female students provided clear warning to the School Board of the danger Meyers' reported predatory behavior posed to female students. The School Board thus knew or should have known that Meyers posed a grave risk of harm to the female students.

60. Each of the School Board's officials, administrators, agents, and employees who received notice of Meyers' reported sexual harassment and abuse of female students had the authority to take corrective action to end Meyers' sexual abuse and harassment of, and discrimination against, female students.

61. At all relevant times, and despite its duty to investigate and respond to the reported sexual harassment and abuse, the School Board failed to conduct a prompt, adequate, impartial, and thorough investigation of the reported sexual misconduct by Meyers and implement any interim measures to protect its students pending an adequate, reliable, and impartial investigation.

62. At all relevant times, and despite its duty to remediate the reported sexual harassment and abuse, the School Board failed to institute any corrective measures to safeguard its female students from the risk of further sexual abuse, molestation, and exploitation by Meyers. This includes, but is not limited to: (i) the School Board's failure to terminate Meyers' employment; (ii) its approval of Meyers' request to transfer to Palmetto High School despite unresolved reports that Meyers was having sex with students at Krop High School; (iii) its failure to limit, restrict, supervise, and monitor Meyers' behavior, communications, interactions, and

relations with female students; (iv) its failure to warn students or parents of Meyers' reported sexual misconduct; and (v) its failure to abide by federal and Florida law and its own policies and procedures with respect to investigating, documenting, and redressing sexual harassment, abuse, and discrimination.  These decisions were official decisions by the School Board to ignore the danger and risk of sexual harassment of female students by Meyers.

63. As a direct and proximate result of the School Board's actions and omissions, Jane was sexually harassed and abused by Meyers.

64. As a result of the sexual harassment and abuse, Jane has suffered, and continues to suffer, substantial injuries, harm, and damages, which are severe and permanent.  This includes but is not limited to past and future emotional, psychological, and physical injuries, pain and suffering, mental anguish, the inability to enjoy a normal life, loss of educational opportunities and benefits, and medical, psychological, and therapeutic treatment for conditions caused by the sexual harassment and abuse.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against the School Board for injunctive and equitable relief under Fla. Stat. § 1000.05(7), as well as her attorneys' fees and costs under Fla. Stat. § 1000.05(7), and such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all her claims.

Respectfully submitted,

By: */s/ Mark A. Schweikert*
Mark A. Schweikert (FBN 70555)
mark@schweikertlaw.com
**SCHWEIKERT LAW PLLC**
90 SW 3rd Street, 700B
Miami, Florida 33130
T: (305) 926-9452